RICHARD E. LOCKRIDGE *v.* STATE OF INDIANA.

[No. 1-976A167. Filed February 10, 1977. Rehearing denied March 15, 1977. Transfer denied June 10, 1977.]

*John D. Clouse,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert L. Clegg, III,* Deputy Attorney General, for appellee.

ROBERTSON, C. J.—The defendant-appellant, Richard Lockridge, appeals his convictions of armed robbery and attempted armed robbery[1] for which he received two concurrent ten (10) year sentences. He presents the following issues for our review:

1. Whether the trial court erred in denying the defendant's motion for continuance?
2. Whether the trial court erred in overruling the defendant's challenge to the array of jurors?
3. Whether the trial court erred in admitting into evidence testimony concerning other offenses committed by the defendant?
4. Whether the jury's verdict is supported by sufficient evidence?
5. Whether the trial court erred in refusing to give defendant's tendered instruction on voluntary intoxication?

We affirm.

The evidence most favorable to the State reveals that at approximately 3:30 A.M. on August 8, 1975, a black man identified as Richard Lockridge, approached the Stop-n-Go store in Evansville, Indiana. Miss Donna Adcock, the store's clerk, was sweeping the store's lot when she first noticed Lockridge walking toward her. Miss Adcock testified that Lockridge ordered her "to get in the store quick". She obeyed, and as they entered the store, Lockridge threatened to kill her if she didn't follow orders.

After entering the store, Miss Adcock, pursuant to Lockridge's orders, opened the cash register drawers and lay face down on the floor behind the counter. While lying on the floor, Miss Adcock heard the robber removing the money from the registers. At that point, she heard someone enter the store's front door. She then heard Lockridge tell the other person to "hold it, give me your wallet". Three shots rang out, and

---

1. IC 1971, 35-12-1-1 (Burns Code Ed.).

Miss Adcock jumped up to see Officer David Cook holding a gun to Lockridge's head.

David Cook, an off-duty Evansville police officer, had stopped by the Stop-n-Go store for a pack of cigarettes. Observing no one in the store, he called out for the clerk. Lockridge moved from behind the counter and exclaimed that "this is a hold-up, give me your wallet or I'll kill you". Cook testified that, as Lockridge came into view, he noticed a sharp object protruding from Lockridge's jacket. Assuming that Lockridge held a weapon, Officer Cook drew his revolver and pointed it at him. Lockridge repeated his threat and started to move away from the counter. Cook fired three times, and Lockridge fell to the floor wounded. Cook walked over to Lockridge and conducted a search of his body. No weapons were found on Lockridge's person, but Cook observed a meat fork beneath the body. Cook also observed a brown shaving kit full of money laying beside Lockridge.

Following the arrival of other officers, Lockridge was taken into custody and transported to a hospital. After recuperating from his injuries, he was tried and convicted by jury.

Initially, Lockridge claims that the trial court erred in denying his motion for continuance. Lockridge argues that the uncontroverted evidence shows that he was neither physically nor mentally able to stand trial or assist in the preparation of his defense.

Lockridge filed his motion on the day of trial. Attached to the motion was a physician's statement saying that Lockridge was unable to stand trial on that day.

The statute controlling Lockridge's request for a continuance states, in pertinent part, that:

\* \* \*

"If the motion for continuance is based upon the illness of the defendant or of a witness, the motion shall be accompanied by the oral testimony, in open court, or by a written statement of a physician . . ., presenting the nature of the

illness and the probable duration of his incapicity to attend trial. Such written statement of the physician . . . shall be sworn to by such physician . . . before a notary public or other officer authorized to administer an oath." IC 1971, 35-1-26-1 (Burns Code Ed.).

Although Lockridge attached a physician's statement to his motion for continuance, the statement was not executed in compliance with the statutory requirements. The statement was not notarized, neither did it present the nature of the illness nor the probable duration of the incapacity. Failing to comply with the statute, Lockridge's motion was properly overruled by the trial court.

Lockridge next argues that the trial court erred in overruling his challenge to the array of petit jurors. He orally challenged the array on the grounds that: (a) the jurors were not called to the jury box in the same order in which their names were drawn for service; and (b) the court clerk failed to certify the list of jurors as drawn for service.

IC 1971, 33-15-22-1 (Burns Code Ed.), provides, in part, that:

"Provided, That the order of names as listed in the panel and as called for service shall be the same order as that in which the names are drawn from the box, as herein provided. The clerk shall at the time of drawing such prospective jurors, enter a list of names so drawn, upon the order-book of the court, in the same order in which the names are drawn from the box, and he shall attach his certificate of the fact. The clerk shall issue venires for such jurors as such courts may direct. The sheriff or bailiff shall then call the jurors to the jury box in the same order as that in which their names are drawn, from the box and certified thereto."

The record clearly indicates that the trial court did not call the prospective jurors to the jury box in the same order as that in which their names were drawn for service. However, our legislature has specifically exempted the Vanderburgh Circuit and Superior Courts from complying with this requirement. In these exempted courts, ". . . jurors need not serve in any particular order in which they are drawn by the jury com-

missioners. . . ." IC 1971, 33-5-43-21 (Burns Code Ed.). Thus, Lockridge's challenge on this ground must fail.

Lockridge correctly asserts that the clerk failed to certify the jury list as required by IC 1971, 33-15-22-1 (Burns Code Ed.). We recently considered this same procedural irregularity in *Grzesiowski* v. *State* (1976), 168 Ind.App. 318, 343 N.E.2d 305. We determined in *Grzesiowski* that such procedural error was harmless in the absence of a clear showing of prejudice and harm.

Lockridge argues that the clerk's error prejudiced him by excluding blacks from the jury panel. Our Supreme Court, disposing of a similar argument, recently stated in *Tewell* v. *State* (1976), 264 Ind. 88, 339 N.E.2d 792, 797, that:

"The right to an impartial jury, precludes systematic and intentional exclusion of any particular class of persons, but it does not require that any particular class be represented. A defendant carries the initial burden of demonstrating that purposeful discrimination existed." (Citations omitted.)

Lockridge has failed to meet the burden set forth in *Tewell*. We are unable to see how the clerk's error resulted in a purposeful discrimination prejudicing Lockridge's right to a fair and impartial trial by jury. Therefore, we hold such procedural irregularity to be harmless error.

Absent a showing of reversible error, the trial court's ruling on Lockridge's challenge must be upheld.

Lockridge next contends that the trial court committed reversible error in admitting, over objection, testimony concerning other crimes commited by him.

The challenged testimony was offered by Miss Donna Adcock, the store's clerk. She testified that Lockridge had robbed the store on two prior occasions, May 3 and June 2, 1975, while she had been working. Miss Adcock recognized Lockridge by his voice, build, general appearance and manner of walking.

It is well settled in this State that evidence showing the commission of other crimes by the accused, separate and distinct from the crime charged, is generally inadmissible. *Maldonado* v. *State* (1976), 265 Ind. 492, 355 N.E.2d 843. However, it is equally as well settled that certain exceptions to the general rule exist. Such evidence may be admissible to show intent, purpose, motive, identity or a common scheme or plan. *Jenkins* v. *State* (1975), 263 Ind. 589, 335 N.E.2d 215. We recently stated the essence of this rule in *Alexander* v. *State* (1976), 167 Ind.App. 688, 340 N.E. 2d 366, 368:

> "In allowing such evidence in certain instances, the court seeks to permit the full disclosure of all relevant facts which have some probative value, not for the purpose of showing the defendant to be a 'criminal type' but to present to the trier of fact all evidence which tends to prove that the defendant committed the crime charged." (Citations omitted.).

As the record reveals, the circumstances surrounding all three robberies are very similar. On all three occasions, the alleged robber, Lockridge, entered the store in the early morning hours; he used the same threatening language when accosting Miss Adcock; he issued the same orders to Miss Adcock after entering the store; and his appearance and apparel were essentially the same. In addition, the evidence shows that all three encounters occurred within a short span of time.

We are of the opinion that the evidence concerning the prior robberies sufficiently shows the existence of a common scheme or plan. Furthermore, this testimony was relevant to, at least, the issue of identity. Thus, the challenged testimony was admissible under the exceptions to the general rule, and the trial court committed no error in overruling Lockridge's objections.

Lockridge next contends that the evidence adduced at trial was insufficient to support the jury's verdicts. Specifically, he argues that there was no evidence introduced to support the requisite element of being armed with a deadly weapon.

It must be remembered that when reviewing an appeal on

sufficiency of the evidence, this Court will not weigh the evidence nor determine the credibility of witnesses. We will consider only that evidence most favorable to the State, together with all logical and reasonable inferences to be drawn therefrom. The conviction will be affirmed if, from that viewpoint, there exists substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Moses* v. *State* (1976), 170 Ind. App. 451, 352 N.E.2d 851.

The record reveals that Officer Cook testified that he observed a pointed object or barrel, which appeared to be a weapon, protruding through Lockridge's tee-shirt. The record also shows that a meat fork was found beneath Lockridge's body.

We are of the opinion that this evidence is substantial evidence of probative value from which the jury could have reasonably inferred that Lockridge was armed with a deadly weapon. Accordingly, we find that Lockridge's convictions were supported by sufficient evidence.

Finally, Lockridge argues that the trial court erred in refusing to give his tendered instruction on voluntary intoxication.

Lockridge's instruction concerned the effects which intoxication may have on a defendant's ability to form the requisite intent to commit armed robbery. We realize that voluntary intoxication may be a defense to armed robbery and that the jury should be instructed on the effects of voluntary intoxication if the evidence so warrants. *Snipes* v. *State* (1974), 261 Ind. 581, 307 N.E.2d 470. We further recognize that, as a general rule, a defendant in a criminal case is entitled to have the jury instructed on any theory of defense which has some foundation in the evidence. *U.S.* v. *Hillsman* (7th Cir. 1975), 522 F.2d 454; *Hedrick* v. *State* (1951), 229 Ind. 381, 98 N.E.2d 906. Notwithstanding

the cited rules, it is not error for the trial court to refuse an instruction which is inapplicable to and not supported by the evidence. *Layne* v. *State* (1975), 164 Ind. App. 486, 329 N.E. 2d 612.

The only evidence relating to intoxication was Lockridge's testimony. He stated that he had consumed one alcoholic drink at approximately 10:00 P.M. on August 7, 1975, and had taken two pain pills earlier that day. There is no indication in the record that Lockridge's judgment was impaired by the consumption of these articles. Thus, it is our opinion that the tendered instruction on voluntary intoxication was inapplicable to the evidence presented. *See: Layne* v. *State, supra.* The trial court did not err in refusing to give this instruction.

Finding no reversible error, the trial court's judgment must be affirmed.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 359 N.E.2d 589.